UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK HART,

                              Plaintiff,

      -v-                                           5:07-CV-1270

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

OLINSKY & SHURTLIFF                      JAYA SHURTLIFF, ESQ.
Attorneys for Plaintiff
300 S. State Street, 5th Floor
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL    JENNIFER S. MCMAHON, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

      This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for social security disability benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Mark Hart ("plaintiff" or "Hart") protectively filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income on June 15, 2004, claiming a period of disability beginning on June 18, 2004.  His claims were initially denied.  He filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on May 3, 2005.  The ALJ rendered a decision on November 3, 2005, denying plaintiff's claims.  On October 13, 2007, the Appeals Council declined further review of the ALJ's decision.  Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the

Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits);

Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

## B. Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment

meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id.

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy

that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Waiver of Right to Counsel

Hart first contends that because he received inadequate notice of his right to representation, he did not knowingly and voluntarily waive that right. According to plaintiff, he suffered prejudice as a result.

There is no constitutional right to representation at a hearing to determine eligibility for social security benefits. Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 506 (2d Cir. 2009), cert. denied, 130 S. Ct. 1503 (2010). There is a right to representation set forth in the statute and regulations. Id. (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). If a person claiming benefits is properly informed of the right to representation, it may be waived. Id. The statutory and regulatory scheme requires that the Commissioner of Social Security "'notify [the] claimant in writing' of (1) her 'options for obtaining [an] attorney to represent [her]' at her hearing, and (2) 'the availability . . . of . . . organizations which provide legal services free of charge' to 'qualifying claimants.'" Id. (quoting 42 U.S.C. § 406(c); 1382(d)(2)(D); citing 20 C.F.R. § 404.1706). Additionally, "at the hearing itself, 'the ALJ must ensure that the claimant is aware of [her] right [to counsel]'. Id. (quoting Robinson v. Sec'y of Health & Human Servs., 733 F.2d 255, 257 (2d Cir. 1984)). If these statutory requirements for are met, notification is adequate. Id. at 508-09.

The Notice of Disapproved Claim sent to plaintiff on August 13, 2004, set forth the procedure for his right to request a hearing and to obtain representation for the hearing. R. at 22-28. Under the heading "If You Want Help With Your Appeal" the notice states the following:

> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer.

Id. at 26. Hart's Request for Hearing by Administrative Law Judge signed by him on September 17, 2004, stated "I understand I have a right to be represented at the hearing" just above the signature line. Id. at 29. A letter dated October 28, 2004, to Hart confirming receipt of his request for a hearing states:

> **Your Right to Representation**
>
> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. . . .
>
> We have enclosed the leaflet 'Social Security and Your Right to Representation.' We are also enclosing a list of groups that can help you find a representative.

Id. at 31. On March 22, 2005, Hart was notified of the time and place set for his hearing. Id. at 41-46. This notice again informed plaintiff of his right to representation, under the bold heading "You May Choose to Have a Person Represent You." Id. at 43.

The ALJ held Hart's hearing by video conference on May 3, 2005. At the hearing, the following exchange took place between plaintiff and the ALJ:

> ALJ: . . . Now, before I go any further, where you received your notice of hearing, it also told you you had the right to have a representation at your hearing?
>
> CLMT: Yes, sir.
>
> ALJ: You can have, have an attorney or a nonattorney, legal services, whatever you want. You also have the right not to have a representative. Nobody can make you have one if you choose not to have one. Do you wish a representative or do you wish now to go forward without one?
>
> CLMT: Yes, I'd rather go forward this time without one, sir.
>
> ALJ: All right. That is your choice. . . .

Id. at 134-35.

Hart was informed of his right to representation in writing on four occasions: August 13, 2004; September 17, 2004; October 28, 2004; and March 22, 2005. Additionally, the ALJ notified him of his right to representation at the hearing itself on May 3, 2005. These notifications meet the statutory and regulatory requirements for notification. Therefore, Hart's waiver of representation was knowing and voluntary. Because the waiver was effective, it is unnecessary to evaluate any alleged prejudice.

### D. Record Development

Hart next argues that there were significant gaps in the medical treatment records because there was no development of the record post June 22, 2004, and no function-by-function medical source statement from a treating source, nor any indication that one was requested.

An ALJ has a duty to develop the administrative record. Perez, 77 F.3d at 47. According to the regulations, the ALJ must "'make every reasonable effort to help [the

claimant] obtain medical reports'" from the claimant's medical sources so long as permission is granted to request such reports. Id. (quoting 20 C.F.R. § 404.1512(d)). Where the evidence is inadequate to make a determination as to claimant's disability, then the ALJ will again contact the "'treating physician . . .or other medical source to determine whether the additional information we need is readily available.'" Id. (quoting 20 C.F.R. § 404-1512(e)).

According to plaintiff his only treatment was at the Veterans Administration[1] Hospital in Syracuse, New York, from 1999 to 2004. See id. at 58-59, 68-70. The administrative record contains progress notes from the Veterans Administration from April 1, 2003, through June 22, 2004. Id. at 79-93. The record contains a psychiatric evaluation following a consultative examination on July 26, 2004, by Kristen Barry, Ph.D., a New York State Licensed Psychologist. Id. at 94-98. It further contains a psychiatric review assessment from June 18, 2004, to August 2, 2004, by Jane Stafford, Ph.D., id. at 99-112, as well as a mental residual functional capacity assessment by her on August 10, 2004, id. at 113-116. The Veterans Administration records and the consultative assessments concur that plaintiff suffers from post traumatic stress disorder and depression, as well as alcoholism in remission.

In addition, the administrative record was supplemented with documents that were a part of Hart's official claim file but were not previously included in the record. See Herbst Aff. Doc. No. 13-1. Included is a Disability Worksheet setting forth the requests for records made in an effort to develop the record, indicating that the Veterans Administration report had been received and placed in the file. Id. It also includes a copy of a letter dated May 24,

---

[1] Hart's application for Veteran's Administration benefits was approved to begin payment effective December 1, 2004.

2005, requesting all medical records to the present date, that was sent to the Veterans Administration Hospital in Syracuse, New York. Id.

The foregoing demonstrates that every reasonable effort was made to supplement the record. Moreover, in making his decision on November 3, 2005, the ALJ noted that he had made every reasonable effort to develop the record pursuant to 20 C.F.R. §§ 404.1512, 416.912, indicating that he recognized and complied with this obligation. The ALJ also stated that sufficient evidence existed to make a determination as to Hart's disability and that no further evidence was necessary. Thus, because the evidence was adequate to make a determination, the ALJ was not required to again contact plaintiff's treating or other medical sources. See 20 C.F.R. § 404-1512(e). The ALJ's attempts to supplement the record comported with the requirements of the regulations.

### E. Residual Functional Capacity Determination/Past Relevant Work

According to Hart, the ALJ's determination of his RFC to perform simple repetitive tasks in an environment free of distractions, and not around hazardous machinery or heights due to medications, was not supported by substantial medical evidence because of the gaps in the record as he argued with regard to the ALJ's duty to develop the record. As determined above, the development of the record met the regulatory requirements. The ALJ's RFC determination is consistent with the diagnoses of post traumatic stress disorder, depression, and alcoholism in remission. Further, according to Hart's own testimony at the hearing, his primary difficulty with working or holding a job was that he cannot focus. More specifically, he stated that something unforeseen such as a telephone ringing or clients at the window, would cause him to become unfocused and unable to perform his job duties. R. at

141-42. This is consistent with the ALJ's determination that plaintiff's work environment must be free of distractions.

Hart also argues that the ALJ's finding that he could not perform his past relevant work of housekeeper was internally inconsistent with the finding that he could perform as a janitor. According to plaintiff's testimony, his past work as a housekeeper did not involve simple tasks. Id. at 153. The ALJ noted that it was possible that Hart could return to the unskilled jobs of housekeeper or stocker, but in an effort to give him the benefit of the doubt, the ALJ would proceed to step five. Id. at 21. The ALJ determined that plaintiff probably could return to his past unskilled relevant work (a finding that is supported by substantial evidence). However, in an effort to provide plaintiff with the best possible opportunity, rather than making a finding that plaintiff was not disabled because he could perform past relevant work, the ALJ proceeded to step five. Hart's reliance upon an inconsistency with progressing to step five of the evaluative process in these circumstances is misplaced and provides no grounds for remand.

In sum, the ALJ's determination that plaintiff could not do past relevant work was supported by substantial evidence. Substantial evidence also supported the ALJ's determination that plaintiff could perform unskilled work in an environment free of distractions, and away from hazardous machinery or heights.

### F. Ability To Do Any Other Work (Step Five)

Finally, plaintiff contends that the ALJ's conclusion that a finding of not disabled was appropriate under SSR 85-15 was application of an inappropriate legal standard. According to plaintiff, at step five the rulings do not direct a finding; rather, that step is left to credible vocational resources and/or the Medical Vocational Rules.

Where the claimant's limitations are nonexertional, SSR 85-15 sets forth a framework for evaluating disability.

> Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base--the entire exertional span from sedentary work through heavy (or very heavy) work-- is reduced by the effects of the nonexertional impairment(s). . . .
>
> The second issue is whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience. . . . If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience. . . .  The assistance of a vocational resource may be helpful.  Whenever vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupation/jobs the person can do functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 85-15, 1985 WL 56857, at *3 (1985).  The ALJ recited the appropriate standard, that in the case of solely nonexertional limitations, a determination must be made following the principles in the regulations, guided by the situations described in SSR 85-15.  R. at 22.  The ALJ consulted a vocational expert to determine the impact of Hart's nonexertional limitations on his occupational base of unskilled work at all exertional levels.  Id. at 21-22.  Given the restrictions that plaintiff has, the vocational expert opined that he could perform the positions at the light exertional level of food preparation worker with 5,000 jobs in New York and 89,000 jobs nationally; janitor/cleaner with 17,000 jobs in New York and 174,000 nationally; and parking log attendant with 4,000 jobs in New York and 33,000 nationally.  Id. at 159.  Based upon the opinion of the vocational expert, as well as the age, education, work experience, and RFC of plaintiff, the ALJ determined that under SSR 85-15 Hart would be capable of making a successful adjustment to other work that exists in significant numbers in

the national economy, making a finding of not disabled appropriate. Id. at 22. Contrary to plaintiff's assertion, the ALJ never stated, nor does his decision indicate, that SSR 85-15 directed a certain outcome. The ALJ followed the appropriate legal standard.

## IV. CONCLUSION

The four notices to plaintiff in writing of his right to representation and the oral notification by the ALJ at the hearing sufficed to meet the statutory and regulatory requirements. Plaintiff's waiver of the right to representation was knowing and voluntary.

The ALJ met his obligation to make reasonable efforts to develop the record. Plaintiff is not entitled to remand on this ground.

The ALJ's determinations that Hart could not perform past relevant work but that he could perform unskilled work in a setting free from distractions and hazardous machinery or heights is supported by substantial evidence.

Finally, the ALJ followed the appropriate legal standard at step five in determining that work existed in significant numbers in the national economy that plaintiff could perform.

Accordingly, it is

ORDERED that defendant's motion for judgment on the pleadings is GRANTED and the complaint is DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 16, 2010
       Utica, New York.